**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**JEFFREY O. SMITH,**

**Plaintiff,**

**vs.** **Case No. 13-cv-269-CVE-TLW**

**CAROLYN W. COLVIN,**[1]
**Acting Commissioner of Social Security,**

**Defendant.**

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Jeffrey O. Smith seeks judicial review of the Commissioner of the Social Security Administration's decision finding that he is not disabled. As set forth below, the undersigned recommends that the Commissioner's decision denying benefits be **REVERSED AND REMANDED**.

**INTRODUCTION**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423 (d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, plaintiff must provide medical evidence of an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§

[1] Effective February 14, 2013, pursuant to Fed. R. Civ. P. 25(d)(1), Carolyn W. Colvin, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423 (d)(3). "A physical impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [an individual's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. The evidence must come from "acceptable medical sources," such as licensed and certified psychologists and licensed physicians. 20 C.F.R. §§ 404.1513(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988) (setting forth the five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." Williams, 844 F.2d at 750.

In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. See Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See id. The Court's review is based on the record, and the Court will "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." Id. The Court may neither re-weigh the

evidence nor substitute its judgment for that of the Commissioner. See Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

**BACKGROUND**

Plaintiff, then a 39-year old male, applied for applied for Title XVI benefits on November 10, 2009. (R.119-21). Plaintiff alleged a disability onset date of August 5, 2009. Id. Plaintiff claimed that he was unable to work due to chronic back pain, depression, anxiety, left knee problems, seizures, schizophrenia, and paranoia. (R. 137). Plaintiff's claim for benefits was denied initially on May 25, 2010, and on reconsideration on August 21, 2010. (R. 67-68). Plaintiff then requested a hearing before an administrative law judge ("ALJ"), and the ALJ held the hearing on September 13, 2011. (R. 31-66). The ALJ issued a decision on November 23, 2011, denying benefits and finding plaintiff not disabled because he was able to perform other work (light work with restrictions). (R. 18-30). The Appeals Council denied review, and plaintiff appealed. (R. 1-5, Dkt. # 2).

**The ALJ's Decision**

The ALJ found that plaintiff had not performed any substantial gainful activity since his application date. (R. 20). The ALJ also found that plaintiff had severe impairments of degenerative disc disease, degenerative joint disease, seizures, major depressive disorder, generalized anxiety disorder, and pain disorder. Id. The ALJ reviewed the "paragraph B" criteria and found that plaintiff had experienced no episodes of decompensation but had moderate limitations in the areas of activities of daily living; social functioning; and concentration, persistence, and pace. (R. 21). The ALJ considered a number of listings but found that plaintiff did not meet or medically equal a listing. (R. 20-21).

At the hearing, plaintiff testified that his back pain prevented him from working. (R. 22). Standing and sitting caused him pain, so he spent most of his time at home, lying down. Id. Plaintiff also had seizures, anxiety, depression, an injury to his left knee, and numbness in his right hand. Id. Plaintiff's pain and anxiety limited him to standing for fifteen minutes and sitting for fifteen minutes. Id. He testified that he could sit for two hours in an eight hour day and walk two or three blocks at a time. (R. 22-23). Plaintiff testified that he experienced a seizure every two or three weeks, but he had downplayed the disorder during his doctor's visits so that he could maintain his driver's license. (R. 23).

The ALJ considered two third-party function reports from plaintiff's mother, dated November 18, 2009 and December 3, 2009. Id. The ALJ found inconsistencies between the two reports, and given the fact that the two reports were "separated by a matter of days," the ALJ determined that the reports were not credible and were not entitled to great weight. Id.

The medical evidence showed that plaintiff sought treatment in November 2009 for a seizure disorder, but plaintiff "stated that he was not sure if he had ever had a seizure." Id. He also denied having seizures so that he would not lose his driver's license, but he sought "confirmation of a seizure disorder" for disability purposes. Id. Plaintiff stated that he had been diagnosed ten years earlier and prescribed medication, but he had stopped taking the medication on his own. Id. During that examination, plaintiff had no back pain, joint pain, or depression. Id. His physical examination was normal, although he displayed signs of anxiety. Id. The doctor diagnosed plaintiff with unspecified anxiety and concluded a seizure disorder was doubtful. Id. The ALJ found that this medical record damaged plaintiff's credibility with respect to his complaints of seizures, back pain, knee pain, and depression. (R. 23-24).

At a consultative examination in February 2010, CT scans "showed *mild* broad based disc bulges from L3-S1," but plaintiff's back pain did not include radiculopathy. (R. 24) (emphasis in

decision). Plaintiff complained of left shoulder pain that appeared confined to his trapezius muscle. Id. Plaintiff reported no seizures in the last ten years. Id. Upon examination, plaintiff "had slightly limited range of motion in back extension and lateral flexion bilaterally." Id. He had some left side weakness and weak heel/toe walking. Id. The remainder of plaintiff's examination was within normal limits. Id. The ALJ determined that this report also lessened plaintiff's credibility, finding that plaintiff's claims of debilitating back and knee pain should have reflected greater limitations and that plaintiff's complaints of seizure disorder were further discredited by plaintiff's own report. Id.

Plaintiff also underwent a psychological consultative examination. Id. Plaintiff reported performing all activities of daily living, including preparing meals and doing some housework. Id. During the examination, plaintiff's behavior was appropriate, and his attention and concentration were intact. Id. The psychologist assessed plaintiff with depression, panic disorder, and pain disorder. Id. The ALJ determined that the report indicated no significant limitations as a result of plaintiff's mental impairments. Id.

Plaintiff received regular treatment from Dr. Martin Davis. (R. 24-25). On December 3, 2009, Dr. Davis reported that he was treating plaintiff for a mental condition, but that condition did not impose more than minimal limitations. (R. 24). Dr. Davis repeated that opinion in August 2010. (R. 25). The ALJ notes that Dr. Davis also completed a physical residual functional capacity report, in which Dr. Davis opined that plaintiff could not sit, stand, or walk for more than six hours in a regular work day and would be absent more than three times per month. (R. 26). Although the ALJ accepted Dr. Davis's opinions with respect to plaintiff's mental impairments, the ALJ rejected Dr. Davis's opinion regarding plaintiff's physical impairments, finding it "not consistent with the medical and other evidence of record." Id.

Plaintiff received additional treatment, including a CT scan in October 2010 to address his complaints of headaches and history of seizures. (R. 25). The CT scan was normal. Id. Plaintiff requested follow-up testing for seizures, even though he denied having them. Id. Six months after the CT scan, plaintiff reported "blanking out," but he admitted that he was not taking his anti-seizure medication. Id. Plaintiff also screened positive for depression at that time, but he admitted that he was not taking his antidepressants as prescribed. Id. Earlier, in June 2010, plaintiff sought treatment for chest pain and anxiety during a vacation, but was found to be in only mild pain. (R. 24). The ALJ found that plaintiff's ability to take vacations further damaged his credibility, as plaintiff testified that he did not leave his house very often and "experienced anxiety while driving and standing in line." (R. 25). Finally, the ALJ noted an August 2011 doctor's visit, in which plaintiff reported increased back pain after helping a friend lay tile. Id. The ALJ found that this treatment note was consistent with her findings that plaintiff's reports of disabling pain and limited physical activity were not credible. Id.

Plaintiff had a second consultative psychological examination in October 2011. Id. At that time, the psychologist found that plaintiff exhibited anxiety and obsessive thoughts and reported auditory hallucinations. Id. Otherwise, plaintiff was alert and goal-directed "with intact memory, judgment, insight, and attention." Id. The psychologist diagnosed a psychotic disorder related to plaintiff's seizure disorder, a mood disorder, and generalized anxiety disorder. Id. He recommended that plaintiff change seizure medication and refrain from daily alcohol use. Id.

After reviewing plaintiff's hearing testimony and the administrative record, the ALJ determined that plaintiff could perform light work with occasional stooping and kneeling; no ladders, ropes, or scaffolds; occasional reaching with the left arm; no machinery or heights; superficial contact with co-workers and supervisors; no significant public interaction; and simple, routine tasks. (R. 21). The ALJ found plaintiff's complaints of back pain and seizures not

entirely credible, as the ALJ indicated throughout her recitation of the medical evidence. (R. 22-26).

The ALJ concluded that plaintiff was unable to return to his previous work as a carpet helper, which was heavy, unskilled work with an SVP of 2. (R. 26). However, plaintiff could perform other work consistent with his residual functional capacity, including work as a light press machine operator, office cleaner, and mail clerk. (R. 27). Accordingly, the ALJ found plaintiff not disabled. Id.

**Plaintiff's Medical Records**

The ALJ's decision addresses all of the medical evidence related to plaintiff's claim of disability. Accordingly, any relevant details from the medical evidence can be addressed in the analysis of plaintiff's claims of error.

**The ALJ Hearing**

At the hearing on September 13, 2011, plaintiff's attorney argued that plaintiff's history of performing heavy work had resulted in back pain, shoulder pain, and fatigue that prevented him from working. (R. 35). The attorney noted that plaintiff's depression and anxiety could also be contributing to his fatigue. Id. Finally, the attorney cited the "onset of seizures the last 10 years." Id. The attorney also took issue with the consultative physical examination report, although he did not cite any specific evidence of the inconsistencies he claimed. (R. 36).

Plaintiff testified that he had not worked regularly for the last fifteen years. (R. 37). He testified that he would work as a carpet layer sporadically whenever his back pain would permit. Id. Plaintiff testified that he had two herniated discs in his low back that pressed on his sciatic nerve, making standing and sitting difficult. (R. 39-40). He complained of an injury to his left knee that caused him to limp. (R. 40-41). He also complained of numbness in his left hand as a result of cut tendons in his finger. (R. 41).

Plaintiff also testified that he had seizures every two or three weeks, although he was unaware of them, and avoided being out in public because of that condition. (R. 40, 45). He would wake up feeling weak, with muscle fatigue. (R. 45-46). He was taking anti-seizure medication, and his doctor had recently increased his dosage. (R. 46). Plaintiff admitted that he had "downplayed" the seizures so that he would be able to keep his driver's license. (R. 48). He also admitted that, for some time, he had refused to take the medication because he was afraid it would cause liver damage, but he had now been taking it for two years. (R. 49, 51).

Plaintiff described feeling "anxious and kind of shaky" when driving. (R. 40). He stated that he had had depression "for probably years." Id. He experienced anxiety and pain after standing for fifteen minutes. (R. 43). He could only sit for fifteen minutes as well. Id. At home, he would relieve the pain by standing and walking. Id. Overall, plaintiff testified that he could sit less than two hours in an eight-hour day and could stand in fifteen minute increments. (R. 44). He could walk two to three blocks at one time, but he would have to stop and rest. Id. He stated that, in a typical day, he would do some chores or activities, but he spent about four hours lying down. (R. 45). He rated his pain as an eight or nine on a scale of one to ten. (R. 47-48).

The ALJ then took testimony from a vocational expert. (R. 54-57). She testified that plaintiff had performed past relevant work as a carpet layer helper, which qualified as heavy, unskilled work. (R. 55). The ALJ proposed two hypotheticals. (R. 55-57). The second hypothetical reflected the ALJ's ultimate findings regarding plaintiff's residual functional capacity. (R. 56). The vocational expert testified that, under those limitations, plaintiff could work as a press machine operator, an office cleaner, or a mail clerk. (R. 56-57). Plaintiff's attorney questioned the vocational expert about the limits set forth in Dr. Davis's opinion. (R. 58). She responded that, if plaintiff could only sit for two hours in a day and stand for two hours in a day, he would be precluded from engaging in competitive employment. (R. 58-59).

## ANALYSIS

On appeal, plaintiff raises multiple points of error:

(1) The ALJ created a blended hypothetical for the vocational expert, which led to a finding of other work that does not meet the requirements of the ALJ's findings with respect to plaintiff's residual functional capacity of light work with additional limitations. Specifically, the ALJ's findings include a medium job and other light jobs that require frequent reaching.

(2) The ALJ did not include the limitations he found at step two in assessing plaintiff's residual functional capacity.

(3) The ALJ failed to properly weigh the opinion evidence of plaintiff's treating physician and the third-party function reports. With respect to the third-party function reports, plaintiff argues that the ALJ used improper criteria to evaluate the mother's opinions and ignored the opinions of two other lay observers.

(4) The ALJ failed to properly assess plaintiff's credibility.

Of these issues, only plaintiff's argument that the ALJ failed to weigh properly the opinion evidence from plaintiff's treating physician requires remand. Accordingly, the undersigned addresses only that issue in this report and recommendation.[2]

**<u>Treating Physician's Opinion</u>**

The ALJ addressed Dr. Davis's opinions three times in her decision. (R. 24, 25, 26). In the first two instances, the ALJ addressed Dr. Davis's statement that he was treating plaintiff for a mental health condition that only posed minimal limitations. (R. 24, 25, 241, 331). The ALJ accepted those findings and used them to find plaintiff not credible. (R. 24, 25).

Dr. Davis also submitted a physical residual functional capacity form, finding that plaintiff could only sit, stand, and walk two hours each in an eight-hour workday. (R. 355-58). That opinion also states that plaintiff has extreme concentration issues as a result of chronic pain

[2] If an objection is filed, and the District Court finds that a remand on this issue is not required, the undersigned recommends that this matter be re-committed for an additional report and recommendation on the remaining issues.

and medication side effects and that plaintiff would miss work more than three times per month. (R. 355-58). With respect to this opinion, the ALJ stated

> [t]he opinion of Dr. Davis at Exhibit 12F is not consistent with the medical and other evidence of record. The record does not indicate that the claimant is as limited as Dr. Davis opines, in that he said there were such extreme limits the claimant could not sit, stand or walk a total of more than 6 hours, lift more than 10 pounds, or ever squat, crawl or climb, and would be absent from work more than 3 times a month.

(R. 26).

Ordinarily, a treating physician's opinion is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(d)(2); see also Hackett v. Barnhart, 395 F.3d at 1173-74 (citing Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003)). If the ALJ discounts or rejects a treating physician opinion, he is required to explain his reasoning for so doing. See Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987) (stating that an ALJ must give specific, legitimate reasons for disregarding a treating physician's opinion); Thomas v. Barnhart, 147 Fed.Appx 755, 760 (10th Cir. 2005) (holding that an ALJ must give "adequate reasons" for rejecting an examining physician's opinion and adopting a non-examining physician's opinion).

The analysis of a treating physician's opinion is sequential. First, the ALJ must determine whether the opinion qualifies for "controlling weight," by determining whether it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and whether it is consistent with the other substantial evidence in the administrative record. Watkins, 350 F.3d at 1300. If the answer is "no" to the first part of the inquiry, then the analysis is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent

with other substantial evidence in the record. Id. "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

However, even if the ALJ finds the treating physician's opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the record, treating physician opinions are still entitled to deference and must be evaluated in reference to the factors enumerated in 20 C.F.R. § 416.927. Those factors are as follows:

> (1) the length of the treating relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed, (3) the degree to which the physician's opinion is supported by relevant evidence, (4) consistency between the opinion and the record as a whole, (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Id. at 1301 (citing Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001)). The ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. Id. (citing 20 C.F.R. § 404.1527(d)(2)). The reasons must be of sufficient specificity to make clear to any subsequent reviewers the weight the adjudicator gave to the treating physician's opinion and the reasons for that weight. See Anderson v. Astrue, 319 Fed. Appx. 712, 717 (10th Cir. 2009) (unpublished)[3].

Plaintiff argues that the ALJ failed to conduct a proper treating physician analysis. (Dkt. # 20). In his reply brief, plaintiff notes that the ALJ did not even assign a weight to Dr. Davis's opinion. (Dkt. # 24).

The Commissioner cites two reasons in support of her argument that the ALJ did not err in weighing Dr. Davis's opinion. First, the Commissioner argues that an opinion not linked to

[3] 10th Cir. R. 32.1 provides that "[u]npublished opinions are not precedential, but may be cited for their persuasive value."

clinical evidence is entitled to no weight, citing Bernal v. Bowen, 851 F.2d 297, 301 (10th Cir. 1988). (Dkt. # 21 at 6-7). The ALJ did not adopt this rationale; therefore, this argument constitutes post-hoc reasoning and cannot be used to support the ALJ's decision. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007) (citations omitted) (holding that "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

Second, the Commissioner argues that the opinion is inconsistent, at least in the area of concentration, with Dr. Davis's earlier opinions regarding plaintiff's mental impairments and, therefore, is entitled to no weight. (Dkt. # 21 at 7). This argument is consistent with the ALJ's vague language that Dr. Davis's opinion "is not consistent with the medical and other evidence of record." (R. 26). For the reasons set forth below, however, this argument fails.

The ALJ does not assign a weight to Dr. Davis's opinion regarding plaintiff's physical residual functional capacity, but it is clear from the context of the decision that the ALJ rejected or gave little weight to that opinion. (R. 25-26). The failure to assign a weight to a treating physician's opinion does not always constitute reversible error. See Kruse v. Astrue, 436 Fed.Appx. 879, 882-83 (10th Cir. 2011) (unpublished) (holding that the ALJ did not commit reversible error in failing to "state a specific weight" attached to a treating physician's opinion where the ALJ's explanation made it clear that the ALJ attached little weight to the opinion). In this case, however, the error is reversible because the ALJ did not cite any specific evidence in the record to support her decision to reject Dr. Davis's opinion. The ALJ's statement – that the opinion "is not consistent with the medical and other evidence of record. The record does not indicate that the claimant is as limited as Dr. Davis opines" (R. 26) – is essentially the type of boilerplate language the Tenth Circuit has rejected. See Langley v. Barnhart, 373 F.3d 1116, 1121-23 (10th Cir. 2004) (holding that the phrase "not supported by the objective evidence in

this case, including his own records" was insufficient to qualify as a specific, legitimate reason for giving a treating physician's opinion less than controlling weight); Garcia v. Barnhart, 188 Fed.Appx. 760, 764-65 (10th Cir. 2006) (unpublished) (holding that a statement that an opinion was "not consistent with the record as a whole" with a single "supporting reference" to the claimant's symptom magnification was insufficient to constitute a specific, legitimate reason for rejecting the treating physician's opinion).

Nonetheless, the undersigned has considered the Commissioner's argument that the ALJ's discussion of the medical evidence constitutes the ALJ's reasoning for rejecting Dr. Davis's opinion. While the Commissioner correctly points out that the record contains sufficient evidence to support the ALJ's rejection of Dr. Davis's opinion, and while the undersigned believes that a proper treating physician analysis would not change the outcome, the fact remains that the ALJ did not connect this evidence to his reasoning.[4] The Tenth Circuit requires the ALJ to do so, and the undersigned can find no authority to allow for application of the harmless error analysis in this instance.

## RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the Commissioner's decision at step five in this case be **REVERSED AND REMANDED**.

## OBJECTION

In accordance with 28 U.S.C. §636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written objections

[4] By comparison, the ALJ does connect her credibility findings to the evidence during her discussion of the medical records. For example, the ALJ notes throughout her decision that despite plaintiff's claims of a seizure disorder, he repeatedly denied having seizures. (R. 23, 24). The ALJ also points out several instances where plaintiff engaged in activity that belied his limited activities, such as plaintiff's report that he had taken a vacation and helped a friend lay tile. (R. 24, 25).

must be filed with the Clerk of the District Court for the Northern District of Oklahoma by April 20, 2014.

If specific written objections are timely filed, Fed. R. Civ. P. 72(b)(3) directs the district judge to determine *de novo* any part of the magistrate judge's disposition to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. See also 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." United States v. One Parcel of Real Property, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

SUBMITTED this 6th day of April, 2014.

T. Lane Wilson
United States Magistrate Judge